**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4578
_____

ALLEN BOYLE;
MICHAEL LUONGO,
                                Appellants

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
LOCAL 863 WELFARE FUND; ADMINISTRATORS INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL 863 WELFARE FUND;
ALPHONSE RISPOLI; BRUCE VIVADELLI; LOUIS SANCHEZ;
DEWEY CANELLA; JOHN O'RIORDAN; DAVID MARKOWITZ

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-03202)
District Judge:  Honorable Stanley R. Chesler

Submitted under Third Circuit LAR 34.1(a)
on November 7, 2013

Before:  GREENAWAY, JR., VANASKIE and ROTH, Circuit Judges

(Opinion filed: August 28, 2014)

O P I N I O N

**ROTH**, Circuit Judge:

Plaintiffs Allen Boyle and Michael Luongo appeal the District Court's denial of their motions for summary judgment, class certification, and attorneys' fees, and the District Court's grant of summary judgment to defendants International Brotherhood of Teamsters Local 863 Welfare Fund, Administrator(s) International Brotherhood of Teamsters Local 863 Welfare Fund, Alphonse Rispoli, Bruce Vivadelli, Louis Sanchez, Dewey Canella, John O'Riordan, and David Markowitz. For the reasons discussed below, we will affirm the District Court's decision in part and vacate and remand in part.

## I.    Background

Boyle and Luongo are among a group of sixty-seven former employees (Early Retirees) of C&S Whole Grocers and its subsidiary Woodbridge Logistics LLP (collectively, C&S). The Early Retirees participated in an early retirement option, which included medical coverage, pursuant to a collective bargaining agreement (CBA) between C&S and the International Brotherhood of Teamsters Local 863. Under the terms of the CBA, C&S submitted payments to the Fund, which, in turn, provided the Early Retirees with health benefits. In February 2011, the CBA between C&S and Local 863 expired and C&S closed all of its warehouses in New Jersey and fired 1,000 employees. After the closing, C&S briefly ceased payments to the Fund to cover medical expenses for both active and former employees, including the Early Retirees. Although C&S resumed payments to the Fund in March 2011, the Fund did not restore health benefits to the Early Retirees until June 13, 2011.

On June 3, 2011, Boyle filed suit in the United States District Court for the District of New Jersey on behalf of himself and similarly situated individuals, alleging

2

that the Fund breached its fiduciary duties under the Employment Retirement Income and Security Act (ERISA), 29 U.S.C. § 1104, for unlawfully withholding benefits to the Early Retirees.[1]  On June 13, 2011, the Fund reinstated the benefits retroactively and later offered to reimburse, with interest, the Early Retirees for any substitute insurance policies or uncovered medical expenses.

## II.    Discussion

### A.    Jurisdiction[2]

As a preliminary issue, defendants contend that Boyle and Luongo lack standing under Article III of the U.S. Constitution.  "Constitutional standing has three elements, all of which must be met:  (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision."  *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 175 (3d Cir. 2001).

We agree with the District Court that this argument is better understood as invoking the mootness doctrine.  After Boyle initiated suit, the Fund resumed health insurance for the Early Retirees and offered to reimburse the cost of any alternative insurance coverage and out-of-pocket medical expenses.  While the doctrine of standing concerns whether a plaintiff is permitted to bring suit at the pleading stage, "the central question of all mootness problems is whether changes in circumstances that prevailed at

---

[1] On November 29, 2011, Luongo joined the case as a named plaintiff in the Amended Complaint.

[2] The District Court had jurisdiction under 28 U.S.C. § 1132.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

3

the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir. 1985) (internal citation omitted). We agree with the District Court that Boyle's claim for breach of fiduciary duty is now moot. After the Fund terminated the Early Retirees' benefits, Boyle purchased alternative COBRA insurance. Boyle has since accepted full reimbursement, with interest, from the Fund. Boyle's claim for attorneys' fees, however, is not rendered moot by the reimbursement and still stands.

Luongo, on the other hand, has repeatedly refused the Fund's offers of reimbursement. The defendants argue that the Fund's mere offer of reimbursement is sufficient to moot Luongo's claim because the Supreme Court has recently held that an offer of complete relief moots the claim. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013). Defendants contend that *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), which the District Court cites to support the proposition that a full offer of settlement does not render moot a plaintiff's claim, is no longer good law. Even if defendants are correct, the named plaintiffs in *Symczyk* and *Weiss*, unlike Luongo, were offered attorneys' fees and costs, which is a disputed issue in this case. The Fund has made no such offer to cover attorneys' fees. We believe that a unilateral offer of relief that fails to cover the entire claim does not render moot a plaintiff's claim.

Accordingly, we conclude that a justiciable controversy remains between Luongo and the defendants as to the breach of fiduciary duty claim, because of the failure to offer attorneys' fees. If an offer of attorneys' fees is made, Luongo's whole claim will become moot since an offer of relief has already been made on the remainder of the claim. For

4

the above reasons, resolution of these claims requires only an offer of reasonable attorneys' fees.

## B. Class Certification

Luongo argues that the District Court abused its discretion in denying his motion to certify a class of the sixty-seven Early Retirees deprived of health insurance from February 2011 until June 2011. The District Court found that class certification was improper because the claims did not seek declaratory or injunctive relief under Fed. R. Civ. P. 23(b)(2).[3] We review the District Court's denial of class certification for abuse of discretion. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011).

We hold that the District Court did not abuse its discretion in denying class certification. Under Rule 23(b)(2), class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2). In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court elucidated the application of Rule 23(b)(2), noting that it "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 131 S. Ct. 2541, 2557 (2011). Claims for monetary relief may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Id.*

---

[3] Because we are persuaded that Luongo does not properly seek injunctive or declaratory relief as required by Fed. R. Civ. P. 23(b)(2), we do not address whether he has satisfied the typicality requirements under Fed. R. Civ. P. 23(a).

5

The Amended Complaint seeks the reinstatement of medical benefits and various forms of monetary relief, but the medical benefits have been restored. The forms of relief – repayment of health insurance, reimbursement of medical expenses, liquidated damages, compensation for unjust enrichment, interest, reasonable attorneys' fees, and costs of suit – are predominantly forms of monetary damages. In addition, the monetary relief for each Early Retiree is individualized, based on the specific alleged harms caused by the lapse in health benefits. Accordingly, we will affirm the District Court's denial of class certification.

### C.     Summary Judgment

Next, Luongo argues that the District Court erred in granting defendants' cross-motion for summary judgment. The District Court determined that there was no genuine dispute as to any material fact concerning whether the Fund breached its fiduciary duties under ERISA. A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We exercise plenary review over a district court's grant of summary judgment, applying the same standard that the district court should have applied." *Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013).

Luongo argues that defendants breached their fiduciary duties by failing to provide him with health insurance or accurate information pertaining to the status of his health insurance. Our analysis focuses on the "prudent man" standard of care set forth under the fiduciary responsibility provision in ERISA. 29 U.S.C. § 1104(a). Under this provision, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence under

6

the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

The record is undisputed that C&S ceased payments to the Fund for health insurance only from February 7, 2011, to March 1, 2011, but that the Fund failed to reinstate health insurance coverage until June 13, 2011. Luongo argues that the Fund refused to restore health benefits immediately because doing so would have required "a lot of work." Applying the ERISA standard, we must determine whether defendants, in light of the circumstances then prevailing, acted "with the care, skill, prudence, and diligence" of a prudent man in delaying health benefits. We find that they did.

In February 2011, the Fund was responsible for providing health benefits and other benefits for not only the Early Retirees, but also nearly 1,000 former C&S employees. After C&S's shutdown and its initial cessation of payments to the Fund, the Fund struggled to sort out and allocate the various payments. The record indicates that, after a lapse in payment, C&S submitted five checks, many without proper identification, for the amounts of $330,590 on March 1, $404,340 on March 10, $75,040 on April 7, $75,040 on May 4, and $93,800 on June 3. When the documentation did arrive, the format was in a mess, and C&S used its own self-created forms that were "not understandable to the Fund, were not in any decipherable order, and were not compatible with the Fund's systems." The Fund was unable to determine, despite multiple inquiries to C&S, whether the payments were intended for the Early Retirees or for the other 1,000 former employees of C&S or for what time period. Moreover, the timing and intervals in which the Fund received these payments departed drastically from prior procedure.

7

Although C&S labeled the later checks for Early Retiree "report[s]," the Fund's efforts to confirm with C&S whether the payments were for current or past amounts, or whether payments would continue beyond that period were unanswered.

Given the confusion and uncertainty, we agree with the District Court that the Fund's decision to reinstate benefits once it could receive clarification was consistent with ERISA's prudent person standard. There is no genuine dispute as to any material fact regarding whether the Fund breached its fiduciary duties under ERISA. Except for the resolution of an amount of reasonable attorneys' fees, the District Court's grant of summary judgment in favor of the defendants will be affirmed.[4]

### D.      Attorneys' Fees

Finally, Luongo and Boyle appeal the District Court's denial of their motion for an award of attorneys' fees. "An award of … attorneys' fees to a prevailing plaintiff in an ERISA case is within the discretion of the district court and may only be reversed for abuse of discretion." *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305 (3d

---

[4] We will also affirm the District Court's finding that the defendants did not engage in misrepresentations. Luongo alleges that the defendants lied to the Early Retirees. "To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account Plan for Empls. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003) (internal citation and quotation marks omitted). The record indicates that Luongo failed to demonstrate that he contacted the Fund and was personally provided misleading information, that the Fund affirmatively provided misleading information, or that Luongo detrimentally relied on a misrepresentation. Luongo's only assertion is that he was told he had no medical coverage because the company closed its doors. J.A. 201. The record cannot support a claim for breach of fiduciary duty based on misrepresentations.

Cir. 2008) (internal citation and quotation marks omitted). "Our review of the legal standards a district court applies in the exercise of its discretion is, however, plenary." *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1273 (3d Cir. 1992) (citing *Student Pub. Interest Research Grp. v. AT&T Bell Lab.*, 842 F.2d 1436, 1442 n.3 (3d Cir. 1998)).

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) (internal citations and quotation marks omitted). Attorneys' fees, however, may be awarded in actions brought under the ERISA statute, which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Luongo and Boyle argue that the District Court incorrectly concluded that ERISA does not permit fee shifting under the catalyst theory, under which a plaintiff may be awarded attorneys' fees if the pressure of the lawsuit caused defendant's voluntary change of conduct. *See, e.g.*, *Wheeler v. Towanda Area School Dist.*, 950 F.2d 128, 132 (3d Cir. 1991).

Defendants cite *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), in which the Supreme Court narrowed the use of the catalyst theory, finding that the defendant's voluntary change of conduct did not establish the plaintiff as the "prevailing party" required for an award of attorneys' fees under the FHA and the ADA. In *Hardt*, however, the Supreme Court held that ERISA includes no "prevailing party" requirement and instead vests district courts with broader discretion to award attorneys' fees. 560 U.S. at 252. Although the Supreme Court did not address the

9

catalyst theory directly, it set forth the governing standard in which the plaintiff must show "some degree of success on the merits" beyond a "trivial success on the merits or purely procedural victory." *Id.* at 255 (internal citations and quotation marks omitted).

Luongo and Boyle argue that they have achieved "some success on the merits" under *Hardt* because defendants voluntarily reinstated benefits to the Early Retirees and reimbursed them for any alternative coverage only after Boyle filed suit. We agree. The District Court erred in holding that the ERISA statute does not permit an award of attorneys' fees under the catalyst theory. We hold that in light of the Supreme Court's clear rejection of the "prevailing party" standard in *Hardt*, the catalyst theory remains viable under ERISA. *Hardt* instructs us to analyze whether Luongo and Boyle have achieved "some degree of success on the merits." We believe the record adequately demonstrates that Luongo and Boyle are eligible for attorneys' fees because they achieved "some degree of success on the merits" under *Hardt*.

Accordingly, we will vacate the District Court's denial of plaintiffs' motion for attorneys' fees and remand to the District Court for further proceedings to determine a reasonable amount of attorneys' fees, if any, to be awarded.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's denial of plaintiffs' motions for class certification and summary judgment, affirm the District Court's grant of defendants' cross-motion for summary judgment, and vacate and remand the District Court's denial of plaintiffs' motion for attorneys' fees as to both Luongo and Boyle.